**In the Matter of CENTURY PLAZA CENTER, Debtor.**

Nos. 88–5007, 88–5195.

United States District Court,
E.D. Louisiana.

Jan. 20, 1989.

Jan Marie Hayden, Michael D. Allday, Frank M. Adkins, Bronfin, Heller, Steinberg & Berins, New Orleans, La., for Century Plaza Center.

Diana L. Rachal, Friend, Wilson & Draper, New Orleans, La., for South Savings & Loan Assoc.

ROBERT F. COLLINS, District Judge.

The above-entitled litigation appears before the Court on appeal from the Bankruptcy Court. In the instant litigation, debtor-in-possession, Century Plaza Center, appellee herein, moves the Court to dismiss the appeal of appellant, South Savings and Loan Association, and to affirm the Judgment of the Bankruptcy Court. The Bankruptcy Court's ruling is hereby affirmed.

*Case History*

The following facts are undisputed for the purposes of this appeal:

(1) On September 18, 1987, the debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code.

(2) On November 24, 1987, the Bankruptcy Court entered an Emergency Order Authorizing Use of Cash Collateral and for Payment of Adequate Protection ("Emer-

gency Order") ordering the debtor to segregate and use, in accordance with the provisions of the order, all rentals from the property of the debtor's estate. The Emergency Order specifically reserved the debtor's right to challenge the characterization of all or any portion of the rentals as "Cash Collateral."

(3) On February 5, 1988, the creditor filed a Motion to Dismiss Pursuant to 11 U.S.C. § 1112(b). Thereafter, on March 10, 1988, the creditor filed a Motion to Lift and/or Modify Stay, both of which were mooted by the Joint Motion to Approve Compromise and for Authorization to Sell Property Free and Clear of Liens and for Other Relief ("Joint Motion") subsequently filed by the debtor and creditor on July 19, 1988.

(4) The Joint Motion evidenced a compromise reached between the creditor and the debtor. It stated that as of September 2, 1987, the indebtedness totalled $1,030,-869.30. The Joint Motion also stated that the creditor agreed to accept from the debtor certain immovable property (appraised at $675,000.00) in exchange for a cancellation of the indebtedness, a complete release of the debtor, and payment of $13,200.00 in cash.

(5) On July 22, 1988, the Court issued a Joint Order authorizing the above described compromise and directing the parties to conclude the transaction within ten days, provided no opposition was filed.

(6) On July 27, 1988, the creditor filed a Motion to Amend Joint Order asking that the Joint Order be set aside.

(7) On August 9, 1988, the creditor filed a Supplemental and Amended Motion to Set Aside Order and/or for Valuation of Property and for Determination of Ownership of Escrowed Funds.

(8) On August 9, 1988, the debtor filed a Motion to Rule in Contempt of Court and to Enforce Settlement Agreement and in Opposition to Motion to Amend Joint Order and/or for Reconsideration and New Trial.

(9) This matter came before the Bankruptcy Court on September 16, 1988.

(10) The debtor stated, at that time, that on July 22, 1988, at the meeting to close the settlement transactions, the creditor "unilaterally" added a new condition to the compromise agreement by demanding that the debtor surrender the rentals segregated by the Emergency Order to the creditor as part of the compromise. When the debtor refused to do so, the settlement transactions were halted.

(11) The creditor contended that the compromise should be rescinded because the parties were unable to agree to a "just valuation" of the property to be given in payment. The creditor also argued that since the debtor refused to surrender the segregated rentals, the compromise should be rescinded because there was a mutual misunderstanding regarding the rentals: The creditor explained that it believed that it owned the segregated rentals by virtue of an Assignment of Rents in the Act of Mortgage securing the indebtedness of debtor. Therefore, it was not necessary to provide for the return of the segregated rentals in the compromise.

(12) The Bankruptcy Court ordered that the motion of Century Plaza Center ("Century Plaza"), debtor, to Enforce Settlement be granted.

(13) The Bankruptcy Court held that its Order, dated July 22, 1988, approving the compromise by and between Century Plaza and South Savings and Loan Association ("South Savings") and authorizing the sale of certain immovable property to South Savings free and clear of all liens in exchange for the satisfaction of the indebtedness of debtor to South Savings, together with the payment by South Savings of the sum of $13,300.00, be maintained.

(14) The Bankruptcy Court held that the rentals segregated by the Emergency Order of November 24, 1987 were the property of Century Plaza.

(15) The Bankruptcy Court held that the valuation of the property in question was $1,030,869.30.

*Basis for Appeal*

Appellant, South Savings, founds its appeal upon the following alleged errors: (A)

The Bankruptcy Court erred in holding that the funds in the cash collateral account are not the property of South Savings; (B) The Bankruptcy Court erred in holding that the value of the property transferred was $1,030,869.30; (C) The Bankruptcy Court erred in finding that mutual mistake did not occur relative to the settlement sought to be enforced.

*Standard of Review*

Bankruptcy Rule 8013, which tracks the language of Rule 52(a) of the Federal Rules of Civil Procedure almost verbatim, mandates the application of the "clearly erroneous" standard of review to the Bankruptcy Court's Findings of Fact. The Bankruptcy Court's Conclusions of Law, however, are subject to de novo review. *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986).

*Law*

### A.

■ South Savings' first issue of contention is "whether the Bankruptcy Court erred in holding that the funds in the cash collateral account were not the property of South Savings."

The cash collateral order which was signed by the parties clearly reserved the right of Century Plaza to contest the nature of the funds. When the settlement agreement was reached between the parties, it provided that *no money* would be paid by Century Plaza to South Savings. The creditor argues, however, that it owns the rentals by virtue of an Assignment of Rents in the Act of Mortgage.

This Court agrees with the Bankruptcy Court that based on the language of paragraphs 18 and 20 of the Act of Mortgage securing the indebtedness and R.S. 9:4401, that written notice was required before an acceleration or an assignment of rents becomes operative against the debtor.

Paragraph 18 provides:

"upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property."

Paragraph 20 provides:

"As additional security hereunder, Borrower assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, *have the right to collect and retain such rents as they become due and payable.*" (Emphasis added.)

R.S. 9:4401(A) provides:

"If such conditional or collateral assignment is made, it shall become absolute upon the assignor's default in respect to the obligation thereby secured or in accordance with the terms of the instrument creating such assignment, and shall become operative as to the debtor upon written notice to the debtor by the assignee."

In the instant case, the creditor never gave the 30-day written notice as required per the terms of the Assignment of Rents. Therefore, it is the Court's opinion that the segregated rentals should have been included in the Joint Motion if it was the intent of the creditor to receive them as part of the compromise. Since the rentals were not included in the settlement agreement, this Court agrees with the Bankruptcy Court that the rentals properly remain the property of South Savings.

### B.

■ The second issue raised by South Savings is "whether the Court erred in holding that the value of the property transferred was over one million dollars rather than the amount set forth in the settlement agreement."

South Savings contends that the Bankruptcy Court erred because the settlement

agreement between the parties valued the property at $675,000.00. The debtor's argument that the compromise should be rescinded for lack of just valuation is without merit.

This Court agrees with the Bankruptcy Court that the dation-en-paiement as proposed by the debtor was accepted by the creditor. For purposes of a dation-en-paiement, it is customary in Louisiana to value the property *either* for the amount of the indebtedness or for its appraised value. Thus, the Bankruptcy Court's valuation of the property at $1,030,869.30, which represents the amount of the indebtedness as of September 2, 1987, was not contrary to law.

### C.

■ South Savings' final issue is "whether the Bankruptcy Court erred in finding that mutual mistake did not occur relative to the settlement sought to be enforced."

Judge Kingsmill found that, pursuant to Louisiana Civil Code Article 1949, there was no basis in fact to find that error vitiated consent in the circumstances of this case. Since Judge Kingsmill issued the initial order approving the compromise between the parties and heard the arguments and testimony at the hearing to enforce the settlement, his finding of fact that the debtor-in-possession did not know nor should have known that South Savings thought that the surrender of the rentals was part of their obligation cannot be taken lightly. Additionally, the appellant has failed to provide evidence which shows that Judge Kingsmill's view of the facts is erroneous, let alone, clearly erroneous. Thus, the Court finds no error in the Bankruptcy Court's finding of no mutual mistake.

In accordance with the above, the Bankruptcy Court is AFFIRMED and the Motion to Dismiss the Appeal is GRANTED.